UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| James Otto | Anthony White |
| | John Conkle |

**Proceedings:**     DEFENDANT DHL GLOBAL FORWARDING'S MOTION FOR
SUMMARY JUDGMENT  (Dkt. 38, filed February 6, 2017)

## I.     INTRODUCTION

On April 10, 2015, plaintiff Salvador Navarro filed this action in Los Angeles
County Superior Court against defendants DHL Global Forwarding ("DHL") and Does
1–50, inclusive.  Dkt. 1-1 ("Compl.").  DHL removed this case to this Court on July 21,
2015.  Dkt. 1.

Plaintiff alleges the following claims against defendants: (1) intentional infliction
of emotional distress; (2) wrongful termination in violation of public policy; (3) unfair
business practices, in violation of California's Unfair Competition Law ("UCL"),
California Business and Professions Code §§ 17200 et seq.; (4) age discrimination in
violation of California Government Code § 12940; (5) disability discrimination in
violation of California Government Code §§ 12926 and 12940; (6) failure to reasonably
accommodate plaintiff's disability in violation of California Government Code §
12940(m); (7) failure to engage in an interactive process to find a reasonable
accommodation, in violation of California Government Code § 12940(n); (8) retaliation
in violation of California Government Code § 12940(h); (9) failure to take all reasonable
steps to prevent discrimination, in violation of California Government Code § 12940(k);
(10) retaliation in violation of California Labor Code § 1102.5.  The gravamen of
plaintiff's complaint is that DHL improperly discriminated against plaintiff and
terminated plaintiff's employment on the basis of plaintiff's disability and his age.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

On February 6, 2017, DHL filed a motion for summary judgment. Dkt. 38 ("Mot."). Plaintiff filed his opposition on February 13, 2017, dkt. 39 ("Opp'n"), and DHL filed its reply on February 17, 2017, dkt. 42 ("Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiff is 53 years old and has diabetes. For 21 years he worked as a cargo handler and driver for DHL, but on July 19, 2013, plaintiff was fired. This suit stems from plaintiff's termination and DHL's alleged business practices leading up to plaintiff's termination. The parties largely dispute the material facts of the case.

Plaintiff began working for DHL on November 12, 1992. Dkt. 39-2, Declaration of Salvador Navarro ("Navarro Decl.") ¶ 3. His diabetes requires that he regulate his blood sugar by ensuring that he periodically eats. Sometimes, when plaintiff is unable to eat during the day, he becomes lightheaded and must stop what he is doing and eat or drink something that will improve his blood sugar. Id. Plaintiff offers evidence suggesting that he requested permission from supervisors at DHL to eat lunch at regular intervals and that he sometimes took breaks from work to tend to his diabetes symptoms. Navarro Decl. ¶¶ 5-6; Dkt. 39-2, Mark Harvey Deposition ("Harvey Depo.") at 31:20-32:1.[1] It is undisputed that DHL knew plaintiff had diabetes. Dkt. 42-1 ("DHL's Reply to Plaintiff's SUF") at No. 14.

However, according to plaintiff, DHL "almost never" allowed him to take lunch during the workday. Navarro Decl. ¶ 6. Although DHL has a formal policy of permitting employee lunches during the workday, plaintiff claims that, in practice, those policies were ignored. Id. ¶¶ 6-7. Instead, plaintiff was forced to work without a lunch period at all "3 to 4 days a week," id. ¶ 9, and was not permitted to keep food in DHL trucks, id. ¶ 10. On days where plaintiff missed lunch, plaintiff claims that he was "forced to sign a 'No Lunch Agreement' that purported to waive the lunch period," after the fact. Id. ¶ 7. Evidently, during this litigation, DHL has produced "over 700 'No Lunch Agreement'

---

[1] DHL claims that "Plaintiff did not request regular meal times." DHL's Reply to Plaintiff's SUF at No. 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|----------|------------------------|------|---------------|
| Title    | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

forms" bearing plaintiff's name. Id. ¶ 9. Plaintiff claims that many of the forms bear
forged signatures in his name, but that he signed others after being told he would be fired
if he refused. Id. ¶¶ 6; 9.

In 2012, plaintiff was suspended without pay for five days after making an
unplanned stop in a DHL truck to get food. DHL's policies prohibit any driver from
deviating from his approved route while operating a DHL truck. Dkt. 38-1, DHL's
Statement of Uncontroverted Facts ("DHL's SUF") no. 2; dkt 38-2, Ex. 5 ("DHL
Warehouse Operations Manual") § 10.3.1. DHL's policies also require drivers to report
any unscheduled events, including unplanned stops and route deviations, to the shift
manager/supervisor immediately while en route. DHL Warehouse Operations Manual §
10.3.4. DHL asserts that plaintiff first violated these policies in August 2012, when
plaintiff made an "unauthorized stop" at a food facility. Dkt. 38-2, Ex. 1 ("Unauthorized
Stop Agreement") (agreement between Teamsters Local 986, Air Express International
USA, Inc., and plaintiff, in which plaintiff agreed that (a) he had made an unauthorized
stop at a food facility, (b) he would serve a five-day suspension without pay, and (c) any
future violation of the authorized stop rule would result in immediate termination).
Plaintiff acknowledged during his deposition that the union shop steward read the
Unauthorized Stop Agreement to plaintiff and that he understood it. Dkt. 38-2, Navarro
Depo. at 33:4–17. However, plaintiff contends that his unplanned stop in 2012 was
compelled by his diabetes and low blood sugar.[2] Navarro Decl. ¶ 14. According to

---

[2] Plaintiff further contends that he understood the 2012 Unauthorized Stop
Agreement, "but objected to it and objected that his stop was unauthorized." Id. No. 9.
However, having closely reviewed plaintiff's citations to the evidentiary record, there
does not appear to be evidence that plaintiff disputed his discipline, at the time, in August
2012. Plaintiff cites portions of the Carlos, Harvey, Galban, and Gumps depositions for
his contention that, on August 24, 2012, he requested a reasonable accommodation from
his superiors before making the unauthorized stop, but was ignored. However, none of
the foregoing deponents appears to have testified regarding the 2012 unauthorized stop.
See Carlos Depo. at 65:23-66:3; Harvey Depo. at 36:3-21; Galban Depo. at 35:3-13;
Gumps Depo. at 23:13-24:6. Similarly, plaintiff cites the Plasencia Declaration;
however, Plasencia stopped working at DHL in 2011 and is similarly silent as to
plaintiff's discipline in 2012. See Plasencia Decl. ¶¶ 4-13. Finally, plaintiff cites his own
declaration. Plaintiff claims that he stopped the vehicle in 2012 because he felt ill and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
| --- | --- | --- | --- |
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

plaintiff, he stopped his truck in August 2012 because he felt it would be unsafe to proceed without eating something. Id.

In addition to the foregoing food related employment conditions, plaintiff claims that he was harassed at work because of his age. Plaintiff offers evidence that DHL managers and employees called him demeaning names because he was "too old to be working at DHL." Id. ¶ 15. At an undetermined time, plaintiff claims that unidentified managers "attempted to force me to retire" because he was "too old to work for DHL." Id. ¶ 16. At some point, plaintiff asked supervisors to stop calling him "'Dinosaur,' and to stop making offensive comments to me of a sexual nature related to my diabetes." Id. ¶ 18.

Additionally, plaintiff claims that he was repeatedly forced to violate state hazardous material handling laws. Plaintiff does not have a license to transport hazardous materials. Ramos, a former employee who worked for DHL until 2010, claims to have seen Harvey and Galban, two DHL supervisors, instruct plaintiff to transport hazardous materials without the proper license. Ramos Decl. ¶ 12. Plaintiff objected to doing so, but Harvey and Galban told plaintiff he would be fired if he refused.[3] Id. ¶ 13.

In July 2013, plaintiff worked as a cargo handler and driver for DHL at its Los Angeles International Airport (LAX) facility. See dkt. 39-1, Plaintiff's Response to DHL's Statement of Uncontroverted Facts ("Plaintiff's Response to DHL's SUF"), no. 1. It is undisputed that on the evening of July 18, 2013, plaintiff made an unplanned stop near LAX. The parties' accounts of the evening are quite different.

Plaintiff offers the following account of events. Plaintiff recalls that he left the Los Angeles International Airport after completing all his pickups and deliveries at approximately 6:05 p.m. on July 18, 2013, drove for eight to ten minutes, and then stopped at the side of the road because he felt too lightheaded to continue. Id. Plaintiff

---

unsafe. Navarro Decl. ¶ 14. However, in his own declaration, plaintiff never claims to have disputed his discipline in 2012. See Navarro Decl. ¶¶ 2-14.

[3] It is unclear when plaintiff complained about the company's hazardous materials practices.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|----------|------------------------|------|---------------|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

ate a piece of bread and drank sugar water to adjust his blood sugar while also filling out certain paperwork for DHL. Id. The paperwork included a log of his deliveries that day as well as an inspection report regarding the DHL truck he was driving. Id. Ex. 3. The inspection report plaintiff completed while stopped appears to have noted an issue with a brake valve. Id. Plaintiff claims that it took "approximately 10 minutes" for him to begin feeling better. Id. ¶ 22.

While plaintiff was stopped, two DHL employees claim to have been watching him from their own vehicle. DHL offers their account of events. On July 18, 2013, John Baitz, terminal manager for the LAX Facility, picked up Eugene Dugan, another DHL management employee, at the LAX facility to return to their hotel. Dkt. 38-2, Declaration of John Baitz ("Baitz Decl.") ¶¶ 3-4; Declaration of Eugene Dugan ("Dugan Decl.") ¶ 2. Baitz drove to the hotel via the "back way" from the LAX Facility and, during this drive, Baitz and Dugan recall seeing a DHL truck parked behind a building in such a way that it was "shielded from traffic." Baitz Decl. ¶ 5; Dugan Decl. ¶ 3. As they approached the truck in their car, Baitz and Dugan saw plaintiff sitting behind the wheel of the parked DHL truck. Id. They claim, although it is disputed, that plaintiff was talking on his cell phone. Id. Baitz and Dugan claim to have watched plaintiff continue his phone conversation for several minutes. Id. Baitz then called the LAX Facility. Baitz Decl. ¶ 5. Juan Carlos, a supervisor, was walking through the LAX Facility dispatch office at the time and picked up the telephone. Dkt. 38-2, Juan Carlos Deposition ("Carlos Depo.") at 87:15–19. Baitz asked Carlos to call plaintiff and ask where plaintiff was located. Baitz Decl. ¶ 5; Carlos Depo. at 86:13–16. Carlos, using his cell phone on the speaker setting, called plaintiff.[4] Carlos Depo. at 86:16–17.

Carlos asked plaintiff what he was doing. Navarro Decl. ¶ 22. Plaintiff claims he told Carlos that he was "doing British paperwork." Id. Plaintiff claims that Carlos hung up the phone before plaintiff could mention feeling lightheaded and that Carlos did not

---

[4] Plaintiff offers his phone records as evidence that Carlos called him at 6:20 p.m. Id. Ex. 2. Contrary to Baitz's account that he watched plaintiff on the phone for several minutes and then called Carlos, plaintiff argues that his phone records show that before Carlos's call at 6:20 p.m., plaintiff most recently spoke on the phone for two minutes from 6:00 p.m. to 6:02 p.m. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

pick up when plaintiff tried to call back.  Id.  Plaintiff claims to have told Baitz he was feeling ill and unsafe to drive.  Id. ¶ 24.  Baitz and Dugan remained on the phone on a landline and could hear the conversation between plaintiff and Carlos because Carlos's phone was on speaker.  Baitz Decl. ¶ 6; Dugan Decl. ¶ 4.

Baitz and Dugan claim the conversation was markedly different from plaintiff's account.  According to them, when Carlos asked plaintiff where he was located, plaintiff responded that he was at British Airlines trying to fit a product in the truck.  Carlos Depo. at 86:17–23.  Carlos repeated the same question in English, and then asked plaintiff the same question in Spanish three or four times.  Each time, plaintiff answered that he was at British Airlines.  Carlos Depo. at 86:22–87:3.  Baitz and Dugan heard plaintiff claim that he was at British Airlines.  Baitz Decl. ¶ 6; Dugan Decl. ¶ 4.  DHL asserts that plaintiff lied to Carlos because at the time plaintiff claimed he was at British Airlines, Baitz and Dugan were watching plaintiff as he was parked behind a building.  Id.

DHL suspended plaintiff that day.  Baitz Decl. ¶ 7.  On the following day, July 19, 2013, Baitz held a meeting with plaintiff and asked plaintiff to explain his conduct.  Id.; Dugan Decl. ¶ 5.  Before the meeting, plaintiff spoke with his union shop steward Danny Bravo.  Dkt 38-2, Deposition of Danny Bravo ("Bravo Depo.") at 9:1–7.  In explaining his stop to Bravo, plaintiff made no mention of his own health, diabetes, or need for food.  Id. at 42:7-14.  Instead, plaintiff told Bravo that he pulled over to fill out his log.  Id. 10:3–10.  Baitz, Dugan, Bravo, and plaintiff then met to discuss what had occurred the day prior.  Baitz and Dugan claim that, at the meeting, plaintiff told them he made the unauthorized stop because his truck was having mechanical problems.  Baitz Decl. ¶ 7; Dugan Decl. ¶ 5.  For his part, plaintiff claims that he "told DHL manager John Baitz that I was feel ill and unsafe to drive."  Navarro Decl. ¶ 24.  That fact appears to be disputed and plaintiff does not state when, relative to his termination, he purportedly spoke with Baitz about his illness.

It is undisputed that Baitz made the decision to terminate plaintiff.  The parties dispute exactly why.  In support of DHL's motion, Baitz offered a declaration in which he claims to have terminated plaintiff because of the 2012 unauthorized stop; plaintiff's unauthorized stop on July 18, 2013; and plaintiff's repeated lies about where he was and what he was doing while his truck was stopped on July 18, 2013.  Baitz Decl. ¶ 7.  He claims "I did not consider Plaintiff's age or disability, including his diabetic condition, in my decision to terminate Plaintiff."  Id.  In support of DHL's reply, Baitz has offered a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. |

supplemental declaration.[5]  Dkt. 42-3, John Baitz Supplemental Declaration ("Baitz Supp. Decl.").  In his supplemental declaration, Baitz recants part of his initial declaration and clarifies that, at the time he decided to terminate plaintiff, he was unaware of plaintiff's prior unauthorized stop in 2012.  Baitz Supp. Decl. ¶ 4.  Baitz further clarifies that, when he decided to terminate plaintiff, he was unaware of plaintiff's age and was unaware that plaintiff had diabetes.  Id. ¶ 3.  Plaintiff offers evidence, evidently an email exchange between Baitz and other DHL staff about Navarro's termination, in which Baitz wrote to Rhonda Wallace:

> [Dugan] and I witnessed Mr. Navarro sitting in his truck talking on his cell phone for over 15 minutes.  I had Juan contact via Radio to update his status and he advised 'at BA getting the missing cargo', completely false
>
> I want to terminate him for lying to supervisor and theft of time.

Dkt. 39-2 Ex. 4.

Plaintiff claims that he was actually terminated because of his age, his diabetes, and his repeated complaints about the lack of appropriate lunch breaks.

## III.   LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[5] Ordinarily, evidence presented for the first time in a reply to a motion for summary judgment should not be considered without affording the plaintiff an opportunity to respond.  Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996).  However, because the Court denies DHL's motion with regard to disability discrimination, there is no need for further briefing by plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.    DISCUSSION

### A.    Disability Discrimination

The California Fair Employment and Housing Act ("FEHA") prohibits employers from discharging an employee "because of" that employee's physical disability. Cal. Gov't Code § 12940(a). California's FEHA is to be "construed liberally," Cal. Gov't Code § 12993(a), in order to "protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement," Cal. Gov't Code § 12920. See also Robinson v. Fair Employment & Hous. Com., 825 P.2d 767, 770 (1992) (discussing the broad purposes and construction of the FEHA).

It is undisputed that DHL was aware of plaintiff's diabetes and that plaintiff's diabetes qualifies as a disability contemplated by the FEHA. Defendant argues that it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
| --- | --- | --- | --- |
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

entitled to summary judgment with respect to plaintiff's disability discrimination claim because, according to DHL, Baitz terminated plaintiff for misconduct, namely, plaintiff's unauthorized stop on July 18, 2013, and plaintiff's alleged misrepresentations about his location at the time. Defendant argues that DHL has a neutral policy regarding vehicle stops by its drivers. Said policy states, "Any unscheduled events (like unplanned stops . . .) MUST be reported back to the shift manager/supervisor immediately while en route." Dkt. 38-2 Ex. 5. According to DHL, plaintiff violated said policy on July 18, 2013, by making an unplanned stop and failing to report it to his supervisor. Additionally, DHL contends that, when Carlos called plaintiff, plaintiff lied about his whereabouts.

Plaintiff argues that he was forced to make an unplanned stop on July 18, 2013, because of a blood sugar imbalance caused by his diabetes. According to plaintiff, because his stop was caused by his disability, his resulting termination constitutes disability discrimination. Plaintiff argues that conduct resulting from his disability cannot provide a valid basis for his termination and that any other purported reasons for his dismissal are pretextual.

In evaluating claims for disability discrimination, California has adopted the three-stage burden shifting framework set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 354 (2000). Once the plaintiff has made a prima facie showing of employment discrimination, "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action." Deschene v. Pinole Point Steel Co., 90 Cal.Rptr.2d 15, 23 (1999) as modified (Nov. 29, 1999). If the employer offers such a reason, "plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated." Id.

### 1. Prima Facie Case

To establish a prima facie case of disability discrimination under the FEHA, a plaintiff must show (1) he suffered from a disability, (2) he could perform the essential duties of his job with or without reasonable accommodation, and (3) he was subjected to adverse employment action because of his disability. McInteer v. Ashley Distrib. Servs., Ltd., 2014 WL 4105262, at *8 (C.D.Cal. Aug.19, 2014) (citing Sandell v. Taylor–Lustig,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

Inc., 188 Cal.App.4th 297, 310, 115 Cal.Rptr.3d 453 (2010)).  The third component is at
issue here.  "Numerous courts note that '[t]he prima facie burden is light; the evidence
necessary to sustain the burden is minimal.'"  Id. at *9 (quoting Sandell, 188 Cal.App.4th
at 310).  On summary judgment, plaintiff's initial burden does not "rise to the level of a
preponderance of the evidence."  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.
1994), as amended on denial of reh'g (July 14, 1994).  To demonstrate a prima facie case,
plaintiff is required to produce "very little" evidence."  Id.  Furthermore, to show that
plaintiff was subjected to an adverse action because of his disability, plaintiff may offer
evidence suggesting that he was fired for conduct caused by his disability.  Equal
Employment Opportunity Comm'n v. Walgreen Co., 34 F. Supp. 3d 1049, 1058-59 (N.D.
Cal. 2014) (citing Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1139 (9th Cir.
2001)).

Defendant appears to argue that plaintiff cannot prove that DHL fired him out of
animus towards those with disabilities.  Plaintiff is not required to do so.  Plaintiff is only
required to prove that he was fired "because of" his disability.  See Cal. Gov't Code §
12940(a).  The plaintiff's disability-induced-conduct and disability status are treated the
same for purposes of the FEHA.  In this regard, Walgreen is instructive.  In Walgreen, the
court was presented with analogous facts as those here.  The plaintiff was diabetic.  One
day, while she was stocking an aisle, her blood sugar dropped suddenly and she took a
snack from the store shelves.  Her employer terminated her pursuant to a company policy
against stealing and she claimed to have been terminated because of her disability.  The
court concluded that there were material issues of disputed fact because the employee
could not be fired for conduct caused by her disability.  Therefore, among other claims,
the plaintiff had a viable claim under the FEHA.  Walgreen, 34 F. Supp. 3d at 1059.  As
in Walgreen, there is evidence suggesting that Navarro may have been fired, at least in
part, for conduct that was caused by his disability – plaintiff's "theft of time," or idleness,
on July 18, 2013.

Viewed in the light most favorable to plaintiff, there is sufficient evidence
demonstrating a prima facie case of disability discrimination.  Plaintiff presents evidence
that he stopped his truck on July 18, 2013, because he was required to eat in order to
maintain an appropriate blood sugar level.  Although DHL was aware of plaintiff's
disability, plaintiff offers evidence suggesting that, in practice, DHL does not permit
drivers to make stops for food and does not permit food in trucks.  Navarro Decl. ¶¶ 8-10;
Plasencia Decl. ¶¶ 6-7.  DHL management observed plaintiff's stopped truck, Baitz Decl.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

¶ 5; Dugan Decl. ¶ 3, wherein plaintiff claims he was eating in contravention of DHL's rule against food in truck cabs.  The next day, plaintiff had been terminated.  In light of the foregoing, plaintiff has offered evidence from which one can reasonably infer that he was fired because of his disability.

Because there is evidence that the July 18, 2013 stop was caused by plaintiff's diabetes and that he was fired for stopping, plaintiff has satisfied his initial burden to show a prima facie case that he was terminated because of his disability.  See Walgreen, 34 F.Supp.3d at 1058-59 (prima facie case established where diabetes caused employee to take food and employer terminated the employee for doing so); Humphrey, 239 F.3d 1128, 1139 (9th Cir. 2001) (disputed factual issues where employer fired employee for missing work, but evidence suggested employee missed work because of psychological disorder).  Accordingly, the burden shifts to defendant.

### 2.  Nondiscriminatory Reason for Termination

Once plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a "legitimate, nondiscriminatory reason" for plaintiff's termination.  Deschene, 90 Cal. Rptr. 2d at 23.  The reason must "disclaim any reliance on the employee's disability," Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1093 (9th Cir. 2001), including conduct caused by the employee's disability, Walgreen, 34 F. Supp. 3d at 1059.

As discussed above, plaintiff contends that he was terminated for stopping his truck, conduct caused by his disability.  Defendant argues that plaintiff was terminated for failing to report the July 18, 2013 stop to a supervisor and for subsequently lying about his location when confronted over the phone.  Although plaintiff's stop may have been caused by his disability, if plaintiff was fired for failing to report the stop and for lying about the stop rather than the stop itself, those would be two valid, nondiscriminatory reasons for his termination.  For present purposes, DHL's evidence that plaintiff violated a nondiscriminatory policy and DHL's evidence that plaintiff lied about his location are sufficient to satisfy defendant's burden of offering a nondiscriminatory reason for plaintiff's termination.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons, but it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection" (citations omitted)). Accordingly, defendant has offered an adequate reason for the termination such that the burden shifts back to plaintiff.

### 3. Disputed Issues of Material Fact Regarding DHL's Motive

At the third step of the McDonnell Douglas burden-shifting analysis, plaintiff must offer evidence suggesting that defendant's nondiscriminatory reason for the termination is either false or pretextual. Plaintiff has adequately raised disputed issues of material fact such that his disability discrimination claim withstands summary judgment.

Insofar as DHL claims to have terminated plaintiff for lying, there is a disputed issue of material fact that cannot be resolved on summary judgment. Plaintiff's own declaration is at odds with those of DHL's employees. At bottom, DHL claims that plaintiff lied by saying he was at the British Airways terminal of LAX, but plaintiff claims to have said he was doing "British paperwork." The disagreement in the evidence must be resolved by a trier of fact.

Insofar as DHL claims to have terminated plaintiff for failing to *report* his unplanned stop on July 18, 2013, there is a disputed issue of material fact. Viewed in the light most favorable to plaintiff, the evidence suggests that plaintiff was not terminated for failing to *report* his unplanned stop but for the unplanned stop itself. See Dkt. 39-2 Ex. 4 (listing theft of time and lying as the reasons for termination). Neither the email chain at the time, nor Baitz's declarations now, mention DHL's policy regarding *reporting* unplanned stops to supervisors. Therefore, DHL has not offered undisputed evidence that plaintiff was fired for failing to report an unplanned stop.

Additionally, there is a disputed issue of material fact regarding whether DHL harbored a mixed-motive in terminating plaintiff. The FEHA prohibits DHL from taking adverse employment actions "because of" plaintiff's disability. Cal. Gov't Code § 12940(a). "Linguistically, the phrase 'because of' is susceptible to many possible meanings." Harris v. City of Santa Monica, 294 P.3d 49, 54 (2013). Ultimately, plaintiff need only demonstrate that his disability was a "substantial factor" in DHL's termination decision. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

Therefore, even if defendant's proffered reasons are valid and not pretextual, DHL must disclaim reliance upon conduct caused by plaintiff's disability – namely his temporary idleness itself. That plaintiff stopped the truck to take a food-break must be distinguished from plaintiff's failure to immediately report the stop and any subsequent representations he made to DHL about the stop. Although factually interrelated, each plausible motive to terminate plaintiff is conceptually distinct and may carry different legal consequences. Insofar as plaintiff's stop was caused by his disability, which is in dispute, it may have been a substantial factor in DHL's decision to fire plaintiff. Plaintiff offers evidence suggesting that conduct allegedly caused by his disability was a motivating factor in his termination. See Dkt. 39-2 Ex. 4 ("I want to terminate him for Lying to supervisor [sic] and *theft of time*" (emphasis added)). On a motion for summary judgment, the Court cannot determine the weight DHL gave to each basis for terminating plaintiff. Therefore, DHL's reasons for terminating plaintiff do not provide a basis for summary judgment.

In light of the foregoing discussion, there appear to be several issues of disputed fact, namely, (1) why did plaintiff stop his truck on July 18, 2013, (2) what was the basis for terminating plaintiff, and (3) was conduct caused by plaintiff's diabetes was a "substantial factor" in DHL's decision to terminate him. Accordingly, DHL's motion for summary judgment is **DENIED** with respect to plaintiff's fifth claim for relief.[6]

---

[6] DHL contends that it cannot be liable for disability discrimination where the adverse action was taken by a decision maker, Baitz, who was unaware of plaintiff's disability at the time.

While it is true that courts generally require an employer be aware of a disability in order to be liable for disability discrimination, see Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 932 (7th Cir. 1995) (discussing the issue at length as it relates to the ADA and a former employee's claim that he was terminated because of a disability), DHL does not dispute that it was aware of plaintiff's disability. It is of no moment that Baitz himself was unaware of plaintiff's disability, although that fact appears to be disputed. See Navarro Decl. ¶ 24. Permitting a corporation to avoid liability where it was aware of an employee's disability, but a particular member of management was not aware of the disability, would be inconsistent with the FEHA's goal of ensuring that disabled employees' opportunities to work are not "abridge[ed]." Cal. Gov't Code § 12920.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

### B.    Age Discrimination

The FEHA also prohibits employers from discharging an employee "because of" that employee's age, Cal. Gov't Code § 12940(a), provided that the employee is over 40 years old, Cal. Gov't Code § 12926(b). DHL argues that it is entitled to summary judgment with respect to plaintiff's fourth claim for age discrimination in violation of California Government Code § 12940. Specifically, DHL argues that Baitz fired plaintiff because of his unauthorized stop on July 18, 2013, and purported misrepresentations thereafter. DHL argues that there is no evidence suggesting a causal connection between plaintiff's age and his subsequent termination.

Plaintiff offers evidence that he was between 49 and 50 years old when he was terminated. Navarro Decl. ¶ 2 (53 years old as of February 2017). Plaintiff also claims that unidentified supervisors at unidentified times called him a "dinosaur," id. ¶ 18, and pressured him to retire, id. ¶ 16. Ramos, who stopped working at DHL in 2010, claims to have seen Mark Harvey, a supervisor, make "derogatory statements" to plaintiff "based on his age." Ramos Decl. ¶ 9. Ramos claims to have witnessed Navarro being "harassed, bullied, and taunted because he was in his 50s." Id. ¶ 10. Given that Navarro was in his 40s when Ramos stopped working at DHL, it is unclear whether the harassment observed by Ramos occurred after Ramos left the company, by people outside the company, or if Ramos has misjudged plaintiff's age. Plasencia, who stopped working at DHL in 2011, claims that Navarro was called "Dinosaur" by DHL managers and that Navarro demanded they stop. Plasencia Decl. ¶¶ 14;17. The foregoing evidence is sufficient to establish a prima facie case of age discrimination. Therefore, the burden shifts to DHL to offer reasons for plaintiff's termination that were not because of his age.

DHL claims, as discussed above, that plaintiff was terminated for the unplanned stop on July 18, 2013, failing to report it, and lying about it afterwards. Plaintiff does not argue that the July 18, 2013 stop was compelled by his age. Therefore, defendant's reasons for terminating plaintiff appear to be valid, nondiscriminatory reasons. Under the McDonnel Douglas framework, the burden shifts back to plaintiff to demonstrate that DHL's offered motives are pretextual or false.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

Plaintiff's opposition to the motion for summary judgment makes no mention of plaintiff's claim for age discrimination except for a fleeting argument that "Plaintiff was a member of a protected class based on disability and age – diabetes, being over 40 years old." Opp'n at 18. Plaintiff's age, standing alone, is insufficient to proceed to trial on plaintiff's claim for age discrimination. Plasencia and Ramos both stopped working for DHL more than 18 months before plaintiff was terminated. Therefore, their observations of plaintiff's experience are less germane to plaintiff's eventual termination. However, none of the witness declarations or depositions offered by plaintiff states when plaintiff was called names because of his age, let alone when he faced pressure to retire.[7] At bottom, plaintiff offers evidence that, at unidentified times, unidentified supervisors pressured him to retire and intimated that he was too old for the job. See Navarro Decl. Plaintiff offers other evidence that Harvey called plaintiff a dinosaur sometime before Ramos was terminated in 2010. See Ramos Decl. The foregoing is insufficiently connected to plaintiff's termination to demonstrate that there is a causal link. Plaintiff does not offer evidence suggesting that Harvey or the other unidentified supervisors participated in his termination. Nor does plaintiff offer temporal evidence from which

---

[7] During oral argument on this matter, plaintiff's counsel argued that there was evidence of the timing of the derogatory statements described here because plaintiff's disputed material fact number 22 states that plaintiff has been called derogatory names based upon his age "[f]or at least the last five years." Plaintiff's Response to DHL's SUF. However, plaintiff's counsel could not refer the Court to specific evidence supporting that statement in plaintiff's briefing, nor can the Court discern any evidence relating to the timing of age-based name-calling.

In support of plaintiff's disputed material fact number 22, plaintiff cites the passages of the Ramos, Plasencia, and Navarro declarations discussed herein. None makes any reference to a specific timeline, let alone harassment for "the last five years." Plasencia and Ramos stopped working for DHL more than 18 months before plaintiff was terminated. The only other evidence relied upon by plaintiff is a passage of Harvey's deposition testimony, in which Harvey disclaims having ever used the word "Dinosaur" to refer to plaintiff or having heard anyone else do so. Harvey Depo. 36:25-37:4. During his deposition, Harvey appears to have acknowledged having heard the name used "out in the warehouse . . . by other cargo handlers," but did not testify to having heard anyone use it to describe plaintiff – let alone at a specific time. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

one might infer that DHL's reasons for terminating him were pretextual. Therefore, plaintiff's age discrimination claim does not appear to withstand summary judgment.

DHL's motion is **GRANTED** with respect to plaintiff's age discrimination claim.

**C.      Wrongful Termination, Unfair Business Practices, and Failure to Prevent Discrimination**

Plaintiff's second claim for wrongful termination, third claim for violation of the UCL, and ninth claim for failure to prevent discrimination appear to be closely related to plaintiff's discrimination claim. Defendant argues in a single paragraph that these claims "are all based on Plaintiff's underlying assertion that he was discriminated against . . . [for which] Plaintiff has no evidence." Mot. at 14. Plaintiff responds that such a blanket argument fails to satisfy defendant's burden of demonstrating entitlement to summary judgment.

The Court finds that plaintiff has demonstrated material issues of disputed fact regarding whether his termination was discriminatory. DHL's conduct may have violated California Government Code § 12940(a). Therefore, defendant is not entitled to summary judgment with respect to plaintiff's wrongful termination and UCL claims. See Leonel v. Am. Airlines, Inc., 400 F.3d 702, 714 (9th Cir. 2005), opinion amended on denial of reh'g, No. 03-15890, 2005 WL 976985 (9th Cir. Apr. 28, 2005) (UCL claim can be predicated upon FEHA violation); Stevenson v. Superior Court, 941 P.2d 1157, 1167 (1997) (claim for wrongful termination in violation of public policy may be predicated upon public policy enshrined in the FEHA).

With respect to plaintiff's claim for failure to prevent discrimination in violation of California Government Code § 12940(k), defendant offers no evidence suggesting that, although it may have discriminated against plaintiff, it took "all reasonable steps necessary to prevent discrimination." Cal. Gov't Code § 12940(k). Therefore, defendant is not entitled to summary judgment with respect to plaintiff's claim for failure to prevent discrimination.

The Court **DENIES** DHL's motion for summary judgment with respect to plaintiff's second, third, and ninth claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

### D.    Retaliation

Plaintiff alleges two claims premised upon retaliation by DHL: a claim for violation of California Government Code § 12940(h) ("FEHA retaliation") and a claim for violation of California Labor Code § 1102.5.  To prove either retaliation claim, plaintiff must demonstrate: (1) he engaged in a protected activity within the meaning of the relevant statute, (2) defendant subjected him to an adverse employment action, and (3) a causal link between the adverse employment action and protected activity.  Mamou v. Trendwest Resorts, Inc., 81 Cal. Rptr. 3d 406, 428 (2008) (FEHA retaliation elements); Robles v. Agreserves, Inc., 158 F. Supp. 3d 952, 1007 (E.D. Cal. 2016) (Section 1102.5 elements).  As with discrimination claims, retaliation claims are evaluated under the burden-shifting framework of McDonnell Douglas.  Yeager v. Corr. Corp. of Am., 944 F. Supp. 2d 913, 930 (E.D. Cal. 2013).

In opposition to the motion for summary judgment, plaintiff argues that he faced retaliation for complaints about DHL's hazardous materials policies, complaints about harassment by his colleagues, complaints about DHL's practice lunch practices, and for stopping his truck.

As an initial matter, plaintiff cannot raise new theories of liability in opposition to a motion for summary judgment.  Plaintiff's complaint makes no mention of DHL's hazardous material policies or that plaintiff took issue with them.  Regarding plaintiff's FEHA retaliation claim, the complaint alleges that he faced retaliation because "Plaintiff demanded return to work [sic] and reasonable accommodations."  Compl. ¶ 70.  Plaintiff's claim for retaliation in violation of the Labor Code states:

> [t]he facts alleged in paragraphs eight (8) through eighteen (18) establish that DHL engaged in improper activity in violation of FEHA and the California Constitution.  Plaintiff complained to DHL about the various violations of federal and state laws.  Plaintiff refused to participate in an activity that he and DHL reasonably believed would result in violation of state and federal law.  DHL retaliated against Plaintiff for his refusal to participate in such illegal activities by management.

Compl. ¶ 84.  Neither paragraphs 8 through 18, nor any other paragraph of the complaint, mentions anything relating to hazardous materials.  Instead, the complaint alleges that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|----------|------------------------|------|---------------|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

DHL forced plaintiff to work without lunch breaks in violation of state law and that plaintiff complained.  See id. ¶¶ 8-18.

Because the pleadings guide discovery, plaintiff cannot avoid summary judgment by raising new theories of liability for the first time after the factual discovery cutoff.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000).  Nor does the Court see a basis for treating plaintiff's opposition as a motion for leave to amend the pleadings.[8]  Accordingly, plaintiff cannot rely upon factual claims relating to DHL's hazardous materials practices in order to demonstrate a material issue of disputed fact.

### 1.    Retaliation for Refusing to Violate State Law

Plaintiff's tenth claim alleges two possible violations of California Labor Code § 1102.5.  Plaintiff's first theory is premised upon his claim that he faced retaliation in violation of section 1102.5 because he "complained to DHL about various violations of federal and state laws."  Compl. ¶ 84.  In support of this claim, plaintiff offers evidence suggesting that he complained to his supervisors about DHL's lunch policies.

California Labor Code § 1102.5(b) prohibits retaliation for certain complaints about an employer's business practices.  In 2014, the statute was amended to protect employee complaints, like plaintiff's, "to a person with authority over the employee."  Cal. Labor Code § 1102.5(b).  However, plaintiff claims to have suffered retaliation in 2013, before the amendment to section 1102.5.  "Under the 2013 version of § 1102.5, only complaints or reports made to a governmental agency are protected; complaints or reports made 'internally' to the employer are not protected."  Robles v. Agreserves, Inc., 158 F. Supp. 3d 952, 1008 (E.D. Cal. 2016).  It is well-established that statutory amendments ordinarily apply prospectively, including these labor code amendments.  Satyadi v. W. Contra Costa Healthcare Dist., 182 Cal. Rptr. 3d 21, 26 (2014); see also

---

[8] "A court has discretion to permit a party opposing summary judgment to offer an amended pleading that sets forth a different theory of liability, and to hold the summary judgment in abeyance."  W. Schwarzer, A. Tashima & M. Wagstaffe, Federal Civil Procedure Before Trial (2016) § 14:340.  Plaintiff has not sought to do so here, nor does there appear to be a basis for doing so.  The discovery cutoff has passed and plaintiff has offered no reason for not raising its hazardous materials claim earlier.  Accordingly, the Court declines to exercise its discretion to permit plaintiff to amend the pleadings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

<u>Aetna Cas. & Sur. Co. v. Indus. Acc. Comm'n</u>, 182 P.2d 159, 162 (1947) (retroactive application of labor code would result in unjust result for employers).  Accordingly, plaintiff's complaints to DHL about practices that he believed violated state law are not protected activities within the meaning of section 1102.5 at the time.[9]

In light of the foregoing, the Court **GRANTS** DHL's motion for summary judgment insofar as plaintiff's retaliation claims are premised upon his complaints to DHL.

Plaintiff's second theory of retaliation in violation of section 1102.5 appears to be that DHL fired him for refusing to break the law.  Plaintiff alleges that he faced retaliation because he "refused to participate in an activity that he and DHL reasonably believed would" violate state or federal law.  Compl. ¶ 84.  In 2013, California Labor Code § 1102.5(c) provided:

> An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

Cal. Lab. Code § 1102.5(c) (2013).[10]  Section 1102.5(c) protects employees from retaliation when they refuse to engage in unlawful conduct if they reasonably believe that the conduct would violate the law.  <u>Robles</u>, 158 F. Supp. 3d at 1008.[11]

---

[9] Although these complaints are not within the scope of California Labor Code section 1102.5(b), they may nonetheless support a common law retaliation claim or claim pursuant to the FEHA.  However, as discussed below, such a claim would not withstand summary judgment.

[10] In contrast to subsection (b), subsequent amendments to subsection (c) have not altered the protected activities in any way that is material here.

[11] Where an employee is the victim of an unlawful labor practice, they cannot be said to have "participate[d]" in the practice.  <u>Weingand v. Harland Fin. Sols., Inc.</u>, case No. 11-cv-3109-EMC, 2012 WL 3537035, at *5 (N.D. Cal. Aug. 14, 2012).  Therefore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

In his opposition, plaintiff appears to argue that continuing to drive with low blood-sugar on July 18, 2013, would have violated both California and Federal laws. Opp'n at 15 (citing 49 C.F.R. § 392.3, a federal commercial driving regulation, and Cal. Civ. Code § 1714, a state statute stating that people are responsible for the results of their own willful and negligent acts). In plaintiff's view, these rules required that he stop driving if and when his diabetes impairs his ability to drive safely. If plaintiff suffered from dangerously low blood sugar on July 18, 2013, continuing to drive would have violated state and federal driving regulations. Accordingly, plaintiff argues, he could not be fired for temporarily pulling to the side of the road.

At bottom, plaintiff's claim for violation of California Labor Code § 1102.5(c) appears to be analogous to his claim for disability discrimination. As discussed above, plaintiff's disability discrimination claim is predicated on his argument that he could not be terminated for being temporarily idle where his idleness was compelled by his disability. Similarly, plaintiff's section 1102.5(c) claim is that he could not be fired for being temporarily idle where his idleness was required by state and federal driving regulations.

Courts sometimes apply analogous standards and burdens to each type of claim and often conflate the standards governing each. See e.g. Mokler v. Cty. of Orange, 138, 68 Cal. Rptr. 3d 568, 580 (2007) (using FEHA discrimination standards to evaluate a section 1102.5 retaliation claim). However, the improper motive required to support each claim is somewhat distinct. As discussed above, the FEHA requires a showing that plaintiff was fired "because of" his disability. The employee's disability-induced conduct is treated as part of his disability, Walgreen, 34 F. Supp. 3d at 1059, and cannot be a "substantial factor" in the decision to terminate him, Harris, 294 P.3d at 54. There is a disputed issue of material fact regarding whether DHL was aware of plaintiff's disability.

In contrast to the FEHA, a retaliation claim pursuant to California Labor Code § 1102.5(c) requires that plaintiff demonstrate *retaliation*. Retaliation can only be shown by demonstrating first that "the employer was aware that the plaintiff had engaged in the protected activity." Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982). It would strain the language of section 1102.5(c) too far to argue that plaintiff suffered

plaintiff's retaliation claim cannot be predicated solely upon the purportedly unlawful conditions of his employment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|----------|------------------------|------|---------------|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

"retaliation" for refusing the drive under unsafe conditions where DHL was wholly unaware of plaintiff's purported reason for stopping, even if DHL was aware of plaintiff's disability.

Although plaintiff now claims that he stopped because of his low blood sugar, plaintiff does not offer evidence that he told DHL that before being terminated. Accordingly, plaintiff has failed to make a prima facie showing that DHL fired him for refusing to drive when he felt it would be unsafe.

The Court **GRANTS** DHL's motion for summary judgment with respect to plaintiff's retaliation claims.

### 2.    FEHA Retaliation

Plaintiff's eighth claim is for retaliation in violation of California Government Code § 12940(h).  Section 12940 provides:

> It is an unlawful employment practice . . . (h) For any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

Plaintiff argues that he was terminated because he complained about having to transport hazardous materials without the proper license, about verbal harassment by coworkers, and about DHL's practice of preventing employee lunches.  As already discussed, plaintiff's hazardous material complaints are outside the complaint and must be disregarded.  In any event, those complaints are not protected by the FEHA.

Although unprotected by California Labor Code section 1102.5 at the time, plaintiff's complaints to his supervisors about DHL's lunch practices may have been protected activity within the meaning of section 12940(h) insofar his disability requires that he eat regularly and denial of lunches might constitute disability discrimination. Similarly, although stray offensive remarks are insufficient to support a claim for discrimination, plaintiff's complaints about the remarks is protected activity under the FEHA.  See Passantino v. Johnson & Johnson Consumer Prod., Inc., 212 F.3d 493, 506

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

(9th Cir. 2000) (informal complaints about sexist remarks are protected activity under analogous provisions of Title VII).

Furthermore, although plaintiff does not expressly allege one in his complaint, plaintiff's complaints to DHL about the conditions of his employment would support a common claim for retaliatory discharge in violation of public policy regardless of whether they technically fall within the protections of the FEHA.  See Tameny v. Atl. Richfield Co., 610 P.2d 1330, 1336 (1980) (recognizing common law tort claim for retaliatory discharge in violation of public policy); Hentzel v. Singer Co., 188 Cal. Rptr. 159, 164 (Ct. App. 1982) (retaliatory discharge claim under Tameny may be predicated upon an employee's complaints to his employer about work conditions he perceives as a hazard to his own health).  Although the scope of protected activities differs, the remaining elements of a retaliation claim under the FEHA are the same as the elements of a common law retaliation claim.  Van v. Language Line Servs., Inc., No. 14-CV-03791-LHK, 2016 WL 3143951, at *24 (N.D. Cal. June 6, 2016).

Under either theory of liability, plaintiff's claim for retaliation cannot withstand summary judgment because plaintiff offers no evidence from which one might draw an inference of retaliatory animus on the part of DHL.  There is no evidence suggesting a causal link between plaintiff's protected complaints about work conditions at DHL and his eventual termination.  An inference of retaliatory animus may be drawn where adverse employment action was taken soon after an employee's protected complaints. Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988).  "A long period between an employer's adverse employment action and the employee's earlier protected activity may lead to the inference that the two events are not causally connected.  But if between these events the employer engages in a pattern of conduct consistent with a retaliatory intent, there may be a causal connection."  Wysinger v. Auto. Club of S. California, 69 Cal. Rptr. 3d 1, 7 (2007).

Plaintiff has made neither showing here.  Plaintiff's only factual claim regarding retaliation for his complaints is his contention that "[t]he time in between Plaintiff's last complaint to a supervisor and his termination was only a matter of weeks."  Opp'n at 23. Plaintiff cites no evidence for this contention, nor can the Court discern any in the record. Furthermore, since plaintiff's argument is vague as to exactly what complaints he claims to have made and when, the Court cannot discern whether he is describing complaints about hazardous materials handling or complaints that would be protected activity under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|----------|------------------------|------|---------------|
| Title    | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

the FEHA.  Without any evidence of a timeline between specific complaints and his eventual termination, the Court cannot discern whether "a matter of weeks" means 14 days or several years.  Therefore, plaintiff's claim for retaliation does not withstand summary judgment.

Plaintiff's argument is that he was fired for complaining about DHL's lunch policy and for complaining about the company's failure to accommodate his diabetes.  Plaintiff is not without a remedy for such purportedly unlawful conduct, but the appropriate remedy does not appear to be a claim for retaliation.  Ultimately, plaintiff has not offered evidence suggesting he was fired in retaliation for his complaints.  However, by its ruling today, the Court does not suggest that plaintiff's complaints to his supervisors at DHL are irrelevant to his claims for relief.  Plaintiff's argument regarding retaliation is, in many respects, analogous to plaintiff's claim for disability discrimination.  Insofar as it relates to plaintiff's claim for discrimination in violation of the FEHA, plaintiff also maintains a claim for wrongful termination.  Plaintiff's complaints to DHL about its lunch policies and his work conditions may be relevant to plaintiff's remaining claims.  Nonetheless, Court **GRANTS** DHL's motion for summary judgment with respect to plaintiff's retaliation claims.

## E.    Reasonable Accommodation Claims

Plaintiff alleges two additional claims pursuant to the FEHA, namely, his sixth claim that DHL failed to reasonably accommodate his disability in violation of California Government Code § 12940(m) and plaintiff's seventh claim that DHL failed to engage in an interactive process to find a reasonable accommodation of plaintiff's disability in violation of § 12940(n).

Pursuant to California Government Code § 12940, it is unlawful:

(m)(1) For an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee . . . .

(n) For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|----------|------------------------|------|---------------|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

> request for reasonable accommodation by an employee or applicant with a
> known physical or mental disability or known medical condition.

DHL does not argue that it could not accommodate plaintiff's disability or that plaintiff
was not entitled to periodic food breaks. Instead, DHL argues that it has not violated
either of the foregoing provisions of the FEHA, "for the simple reason that DHL's
policies clearly provided Plaintiff with the ability to eat food, including lunch, whenever
his disability required." Mot. at 16. DHL then explains the policies it has in place to
permit lunch breaks. Id. However, plaintiff presents evidence suggesting that, in
practice, plaintiff's supervisors regularly prevented him from taking lunch despite DHL's
policies. See e.g. Plasencia Decl. ¶ 6 ("DHL required that drivers for go [sic] their 30
minutes of lunch . . . DHL insisted that SALVADOR NAVARRO and other drivers work
without lunch until all pickups and deliveries were done"); Ramos Decl. ¶ 6 ("I was
present and witnessed numerous times when upper management . . . instructed Mr.
Navarro to finish all pickups and deliveries at LAX before taking a lunch or a break, and
did not permit [him] to take his lunch or his breaks until he had worked more than 8
hours"). In reply, DHL argues that it was plaintiff's obligation to request a reasonable
accommodation of his disability if existing policies were inadequate.

Contrary to DHL's contention, once an employer knows of an employee's
disability, the employer has an affirmative obligation to engage in an interactive process
and make a reasonable accommodation. Cal. Code Regs. tit. 2, § 11068; see also
Prilliman v. United Air Lines, Inc., 62 Cal. Rptr. 2d 142, 149 (1997) (once the employee
notifies an employer of her condition, "this notice then triggers the employer's burden to
take 'positive steps' to accommodate the employee's limitations") (quoting Goodman v.
Boeing Co., 899 P.2d 1265, 1269–1270 (1995)).

> [A]n employee is not required to use the phrase 'reasonable accommodation'
> when requesting reasonable accommodation—an employee must merely let
> the employer know, in a manner that would be understood by a reasonable
> employer, that the employee has a disability that requires some sort of
> accommodation in order for the employee to be able to perform his work
> duties. Once an employee has let an employer know that he is disabled and
> desires reasonable accommodation, the employer is then obligated to offer
> reasonable accommodation (if a reasonable accommodation that does not
> impose undue hardship is feasible), which may entail engaging in an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|----------|------------------------|------|---------------|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

interactive process with the employee to determine what reasonable accommodation(s) would permit the employee to perform the essential functions of his or her position.

Norris v. Allied-Sysco Food Servs., Inc., 948 F. Supp. 1418, 1437 (N.D. Cal. 1996), aff'd sub nom. Norris v. Sysco Corp., 191 F.3d 1043 (9th Cir. 1999).

In this case, it is undisputed that DHL was aware of plaintiff's disability and that he notified his supervisors.  Plaintiff has also demonstrated a material issue of disputed fact regarding whether or not DHL afforded him a reasonable accommodation of his disability and whether DHL engaged in an interactive process regarding plaintiff's need to manage his blood sugar levels and, on occasion, take a break to do so.  Although DHL may have had neutral policies permitting lunch-breaks, plaintiff offers evidence suggesting that those policies were ignored in practice and that DHL threatened to terminate him if he took a break under many circumstances.  See e.g. Ramos Decl. ¶ 6 (when Navarro requested a lunch-break and explained the necessity that he eat, managers told Navarro he would be fired unless he performed six to eight hours of work without a break).

Defendant's motion for summary judgment with respect to plaintiff's reasonable accommodation and interactive process claims is **DENIED**.[12]

_____

[12] Defendant also argues that, in any event, plaintiff has not demonstrated any material injury as a result of DHL's lunch practices such that he can proceed to trial on his freestanding claims for reasonable accommodation and failure to engage in an interactive process.  Defendant's argument, raised for the first time in a reply brief, cannot provide a basis for summary judgment without affording plaintiff an opportunity to respond.  However, further briefing does not appear to be necessary.

As an initial matter, plaintiff appears to contend that if DHL had accommodated his disability, he would not have been terminated on July 18, 2013 for stopping with low blood sugar.  Plaintiff contends that he only stopped after being required to perform four successive deliveries, making it impossible to eat and also perform his job duties.  Navarro Decl. ¶ 19.  Additionally, plaintiff offers evidence that DHL prevented him from eating lunch for years despite his diabetes, did not permit him to eat anything in the cab of its trucks, and threatened to terminate him if he refused to sign "No Lunch

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

**F.      Intentional Infliction of Emotional Distress**

The elements of a claim for intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . . Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Christensen v. Superior Court, 54 Cal.3d 868, 903, 820 P.2d 181 (1991) (internal quotations and citations omitted).

DHL contends that plaintiff's claim for emotional distress fails because it is predicated upon plaintiff's purportedly inadequate discrimination and retaliation claims. According to defendant, plaintiff cannot claim to have been the victim of intentional infliction of emotional distress where he was terminated for valid reasons.

Plaintiff responds that discrimination is outrageous as is terminating plaintiff "for obeying the law." Opp'n at 28. However, plaintiff cites no legal authority for his contention that a violation of the FEHA is per se outrageous such that it can support a claim for intentional infliction of emotional distress.[13]

---

Agreement[s]" on days he missed lunch. Id. ¶¶ 6-10. Plaintiff further claims that many of the "No Lunch Agreement[s]" in his name bear forged signatures. Id. ¶ 9.

In light of the foregoing evidence, there are material issues of disputed fact regarding plaintiff's possible injury.

[13] Although plaintiff's opposition cites several cases relating to discrimination, none has bearing here. One case upon which plaintiff relies does not discuss intentional infliction of emotional distress claims at all because none was alleged therein. See Jones v. Los Angeles Cmty. Coll. Dist., 244 Cal. Rptr. 37 (Ct. App. 1988). Several other cases upon which plaintiff relies do not purport to evaluate whether conduct was sufficiently outrageous to support a claim for intentional infliction of emotional distress. See Accardi v. Superior Court, 17 Cal. App. 4th 341, 347 (1993) (holding that discrimination is not a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

At bottom, plaintiff does not offer evidence demonstrating conduct so extreme as to exceed all bounds of that usually tolerated in a civilized society.  Where an employee is callously fired for pretextual reasons and suffers emotional distress, that evidence is insufficient to support a claim for intentional infliction of emotional distress.  Buscemi v. McDonnell Douglas Corp., 736 F.2d 1348, 1352 (9th Cir. 1984).  "There is nothing, as a matter of law, extreme and outrageous about the act of terminating an employee on the basis of unproven or false or even malicious accusations." McNaboe v. Safeway Inc., Case No. 13-cv-04174-SI, 2016 WL 80553, at *6 (N.D. Cal. Jan. 7, 2016).

Accordingly, the Court **GRANTS** defendant's motion for summary judgment with respect to plaintiff's first claim for intentional infliction of emotional distress.

---

normal incident of employment such that an emotional distress claim would be barred by the exclusive remedy provisions of Cal. Labor Code § 132a); Fretland v. Cty. of Humboldt, 82 Cal. Rptr. 2d 359 (1999) (same); Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 811, 29 P.3d 175 (2001) (discussing the applicable statute of limitations to continuing violations of the FEHA).

The sole case upon which plaintiff relies which evaluated whether plaintiff had alleged or adequately supported a claim for intentional infliction of emotional distress is Alcorn v. Anbro Eng'g, Inc., 2 Cal. 3d 493, 497, 468 P.2d 216 (1970).  However, Alcorn is typical of such claims and is easily distinguished from this case.  See id. (stated a claim for intentional infliction of emotional distress where foreman yelled, "You goddamn 'niggers' are not going to tell me about the rules.  I don't want any 'niggers' working for me.  I am getting rid of all the 'niggers'; go pick up and deliver that 8-ton roller to the other job site and get your pay check; you're fired").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05510-CAS (Ex) | Date | March 6, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

## V.   CONCLUSION

DHL's motion for summary judgment is **DENIED in part** and **GRANTED in part**. The motion is **DENIED** with respect to plaintiff's second, third, fifth, sixth, seventh, and ninth claims. The motion is **GRANTED** with respect to plaintiff's first, fourth, eighth, and tenth claims.

IT IS SO ORDERED.

|  | 00 | 14 |
|---|---|---|
| Initials of Preparer | CMJ | |