UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|

| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. |
|---|---|

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE |
|---|---|

| CONNIE LEE | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, AND IN THE ALTERNATIVE, A NEW TRIAL (Dkt. 91, filed August 21, 2017)

## I. INTRODUCTION

On April 10, 2015, plaintiff Salvador Navarro filed this lawsuit in Los Angeles County Superior Court against defendant DHL Global Forwarding ("DHL"). Dkt. 1-1. DHL removed the action to this Court on July 21, 2015. Dkt. 1. After the Court granted in part and denied in part DHL's motion for summary judgment on March 6, 2017, dkt. 43, five claims proceeded to a jury trial: (1) wrongful termination in violation of public policy; (2) failure to reasonably accommodate plaintiff's disability in violation of California Government Code § 12940(m); (3) failure to engage in an interactive process to find a reasonable accommodation, in violation of California Government Code § 12940(n); (4) failure to take all reasonable steps to prevent discrimination, in violation of California Government Code § 12940(k); and (5) disability discrimination in violation of California Government Code §§ 12926 and 12940. Dkt. 50.

The trial commenced on May 9, 2017. Dkt. 60. After plaintiff rested his case-in-chief, DHL moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The Court reserved judgment on the motion. Dkt. 62. On May 17, 2017, the jury returned a verdict for plaintiff on all five claims and awarded him $765,000 in past and future lost wages plus an equal amount in emotional distress damages. Dkt. 83 ("Special Verdict Form"). The jury did not award punitive damages. Dkt. 87.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

On August 21, 2017, DHL filed the instant renewed motion for judgment as a matter of law pursuant to Rule 50(b) and, in the alternative, a motion for a new trial pursuant to Rule 59. Dkt. 91 ("Mot.").[1] Plaintiff filed his opposition on August 28, 2017, dkt. 92 ("Opp'n"), and DHL filed a reply on September 1, 2017, dkt. 93 ("Reply"). The Court held a hearing on September 18, 2017. Having considered the parties' arguments, the Court denies both motions for the following reasons.

## II.  BACKGROUND

The following is a summary of the evidence presented at trial.

### A. Plaintiff's Case-in-Chief

Plaintiff testified that he had worked for DHL as a cargo handler for almost 22 years at a facility near the Los Angeles International Airport ("LAX"). 1RT 116, 119 (May 9, 2017). Plaintiff has diabetes, which can cause dizziness, blurred vision, and fainting unless he eats at regular intervals. 1RT 132–33. When his blood sugar level drops, plaintiff usually drinks juice or water mixed with sugar to control these symptoms. 2RT 42 (May 10, 2017). DHL did not allow its drivers to keep food in the company's trucks. RT 110. Plaintiff informed his managers, including John Baitz ("Baitz"), that he was diabetic and requested permission to take regular lunch breaks; however, his schedule was never adjusted and his managers repeatedly denied his requests. 2RT 46–48, 60. Plaintiff worked many shifts without a lunch break and signed "No Lunch Approval" forms after the fact, although he testified that many of the forms introduced at trial were forgeries. 2RT 66, 86–95. On August 24, 2012, plaintiff was suspended without pay for five days after making an unplanned stop in a DHL truck to buy food. Plaintiff told his managers that it was an emergency stop because he was feeling dizzy and had blurred vision. 2RT 53–60.

On July 18, 2013, plaintiff was assigned an eight-hour shift and complained to his supervisor that he needed a lunch break, but his request was denied. 2RT 98. On his way

---

[1] Under both Rule 50(b) and Rule 59, the motion must be filed no later than 28 days after entry of judgment. However, final judgment has not been entered in this case. Although the Court directed plaintiff to submit a proposed judgment, see dkt. 75, no submission has been filed. Accordingly, the Court considers DHL's motions to be timely.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

back to the LAX facility after completing his last pick up at British Airlines, plaintiff started feeling dizzy, so he parked his truck in an empty lot. Plaintiff drank sugar water to bring up his blood sugar level and completed some forms that he had not finished at the airport. 2RT 102–06. Plaintiff then received a phone call from a supervisor, Juan Carlos ("Carlos"), who asked where he was located. Plaintiff said he was doing "British paperwork." Plaintiff heard Carlos tell another individual that plaintiff was "at British," but Carlos hung up the phone before plaintiff could clarify. Plaintiff tried to reach Carlos on the radio and his cell phone, but Carlos did not answer. RT 106–21. As he was pulling out of the lot, plaintiff saw one of his managers, Baitz, sitting in a car across the street with another individual he did not recognize. 2RT 127–28.

When plaintiff retuned to the LAX facility, he met with several supervisors and his union shop steward, Daniel Bravo ("Bravo"), and was questioned about the stop that he had just made. Plaintiff explained that he was feeling dizzy and had blurred vision so he pulled over to drink sugar water to stabilize his blood sugar level. 2RT 129. On the following day, July 19, 2013, plaintiff was called into a meeting with Baitz, another manager, and Bravo. The managers accused plaintiff of making an unauthorized stop and lying to Carlos. Plaintiff explained what had happened and that he had stopped the truck to drink sugar water to stabilize his diabetic condition. Plaintiff was suspended for seven days pending an investigation and subsequently terminated for "dishonest behavior." 2RT 130–32.

Plaintiff presented the testimony two other witnesses. Carlos Plasencia ("Plasencia") was a cargo handler and shop steward at DHL for 34 years until he retired in 2011. 1RT 37, 70, 75. Plasencia testified that DHL had restrictive meal and rest break policies and did not permit drivers to make stops for food or allow drivers to keep food in their trucks. 1RT 50–51, 58. Plasencia liaised between plaintiff and DHL managers on several occasions when plaintiff complained that he was being denied lunch breaks despite having diabetes. The issue was never resolved, and plaintiff told Plasencia that management had intimidated him. 1RT 76–81. Plasencia testified that it was a well-known fact at DHL that plaintiff had diabetes, and that he specifically had discussed plaintiff's condition with several managers. 1RT 85. Sergio Ramos ("Ramos"), a former DHL supervisor, also testified regarding the company's meal and rest break practices and general unwillingness to accommodate employees with disabilities. 2RT 7–25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

### B. Testimony Presented by DHL

Baitz, Gene Dugan ("Dugan"), and Carlos testified regarding the incident on July 18, 2013. Baitz testified that he picked up Dugan, another DHL manager, at the LAX facility to return to their hotel. 3RT 116–17 (May 11, 2017). While driving back to the hotel, Baitz noticed a DHL truck blocking the entrance to a construction site and saw plaintiff sitting at the wheel. Plaintiff was talking on his cell phone and did not appear to be in distress. 3RT 117–19. Baitz called the LAX facility and asked Carlos to get a status update from plaintiff. Carlos made the call over speakerphone so Baitz and Dugan could overhear the conversation, which was partially in Spanish. When Carlos asked plaintiff where he was located, plaintiff responded that he was at British Airlines picking up a shipment. 3RT 120–21. Dugan's testimony was consistent with that of Baitz. See 3RT 190–95.

Carlos testified that he asked plaintiff where he was located several times in both English and Spanish to clarify because he knew the severity of the situation. Each time, plaintiff answered that he was at British Airlines. Carlos did not pick up his phone when plaintiff called back. 4RT 7–9 (May 12, 2017). Carlos also testified that he met with plaintiff, Bravo, and another manager, Kenny Wilton ("Wilton"), when plaintiff returned to the LAX facility immediately following the unplanned stop. 4RT 26. Carlos testified that plaintiff said he had parked his truck because he had been texting with or talking to his daughter. 4RT 10. On cross-examination, however, Carlos acknowledged plaintiff also told the group that he had stopped because he needed to drink water or words to that effect. 4RT 26–27.

Bravo, the union shop steward in July 2013, testified that plaintiff had never approached him with any complaints regarding lunch or rest breaks. 3RT 171. Bravo assisted plaintiff during the disciplinary meeting with Baitz and Dugan on July 19, 2013 and helped him file a grievance following his termination. Prior the meeting, they met separately and plaintiff told Bravo that he had stopped the truck to fill out a trip report. 3RT 172–73. On cross-examination, Bravo testified that plaintiff only informed him that he had been feeling sick and needed to stop *after* the meeting with management on July 19, 2013. 3RT 177. However, Bravo also testified that he had participated in the meeting the previous evening with plaintiff, Carlos, and Wilton during which plaintiff stated that he needed to stop to drink water. Bravo knew plaintiff was diabetic. 3RT 188.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**O**

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

Baitz and Dugan testified regarding the meeting with plaintiff on July 19, 2013. According to Baitz and Dugan, plaintiff initially told them he had stopped to fill out his trip report. 3RT 125, 197. Plaintiff then explained that his truck had been having mechanical problems. 3RT 125–25, 198. Baitz explained that DHL's policies require drivers to immediately report any unplanned stops. 3RT 127–28. Baitz testified that he made the decision to terminate plaintiff based on his failure to report the unauthorized stop and false statements to Carlos. 3RT 130–31. Both Baitz and Dugan denied knowing that plaintiff was diabetic. 3RT 134, 199. That same day, Baitz sent the following email to the HR department:

> [Dugan] and I witnessed Mr. Navarro sitting in his truck talking on his cell phone for over 15 minutes. I had Juan contact via Radio to update his status and he advised 'at BA getting the missing cargo', completely false. I want to terminate him for lying to supervisor and theft of time.

3RT 133. By theft of time, Baitz testified that he meant taking an unplanned stop and not reporting it correctly. 3RT 134. On cross-examination, Baitz acknowledged that plaintiff's personnel file indicates he has diabetes but stated he never reviewed the file. 3RT 138.

DHL presented the testimony of several additional witnesses regarding its employment policies and practices. Yvonne Darensbourg, DHL's Director of Labor Relations, provided an overview of the company polices on diversity, anti-discrimination, and accommodating disabilities. 4RT 28–42 (May 12, 2017). Pablo Yanez ("Yanez"), a cargo handler at the LAX facility, testified that employees could bring food in the cab of DHL's trucks and that the company sent relief drivers to provide lunch breaks. 4RT 54–55. On cross-examination, Yanez testified that he was "sure" that everyone at the LAX facility, including the supervisors, were aware plaintiff had diabetes. 4RT 58. Butch Barbra, a cargo handler, also testified that DHL allowed drivers to eat food in their trucks and did not refuse lunch breaks. 4RT 64–65. Rafael Galban, who was a shift manager in July 2013, testified that he knew plaintiff was diabetic. 4RT 74–76, 80. Galban denied that he had ever denied plaintiff a meal break and stated he had never received any complaints from Plasencia. 4RT 82–83. Galban testified that DHL has policies in place at the LAX facility to allow drivers with diabetes to eat food in their trucks as a reasonable accommodation. 4RT 85.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

### III. LEGAL STANDARDS

#### A. Motion for Judgment as a Matter of Law

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). If the court does not grant a motion for judgment as a matter of law pursuant to Rule 50(a), a party may file a renewed motion for judgment as a matter of law after trial. Fed. R. Civ. P. 50(b). "A renewed motion for [judgment as a matter of law] is properly granted 'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1242 (9th Cir. 2014) (quoting Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002)). "A jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible." Id. While the court should review the record as a whole, "it must disregard all evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

#### B. Motion for a New Trial

Federal Rule of Civil Procedure 59(a)(l) provides that, after a jury trial, a court may grant a motion for a new trial based "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," district courts are "bound by those grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). Those grounds include, but are not limited to: (1) a verdict that is contrary to the weight of the evidence; (2) a verdict that is based on false or perjured evidence; (3) damages that are excessive; or (4) to prevent a miscarriage of justice. Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir.2007). When a motion for a new trial is based on insufficiency of the evidence, courts must evaluate the evidence and may assess for itself the credibility of witnesses. Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990). A district court "may grant a new trial only if the verdict is against the clear weight of the evidence,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

and may not grant it simply because the court would have arrived at a different verdict." Pavao, 307 F.3d at 918.

## IV. DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

DHL argues that it is entitled to judgment as a matter of law because plaintiff failed to offer any evidence during his case-in-chief affirmatively establishing that his disability was a substantial motivating factor in DHL's termination decision. Mot. at 4–7. Accordingly, DHL maintains that no reasonable jury could have found that plaintiff proved the essential elements of his first claim for wrongful termination in violation of public policy and fifth claim for disability discrimination claim under FEHA. Id.

California has adopted the three-step burden shifting scheme from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to analyze discrimination claims. Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 354 (Cal. 2000). "At trial, the *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination." Id. If the plaintiff establishes a prima facie case, "a presumption of discrimination arises," and "the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to raise a genuine issue of fact and to justify a judgment for the employer that its action was taken for a legitimate, nondiscriminatory reason." Id. at 355–56 (quotation marks and citations omitted). "[W]hether or not a plaintiff has met his or her prima facie burden, and whether or not the defendant has rebutted the plaintiff's prima facie showing, are questions of law for the trial court, not questions of fact for the jury." Caldwell v. Paramount Unified Sch. Dist., 41 Cal. App. 4th 189, 201 (1995). "If the employer sustains [its] burden, the presumption of discrimination disappears. The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." Guz, 24 Cal.4th at 356 (citations omitted). "The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." Id.

"In order to establish a prima facie case of disability discrimination under the FEHA, a plaintiff must show (1) he suffered from a disability, (2) he could perform the essential duties of his job with or without reasonable accommodation, and (3) he was subjected to adverse employment action because of his disability." McInteer v. Ashley Distribution Servs., Ltd., 40 F. Supp. 3d 1269, 1281 (C.D. Cal. 2014) (citing Sandell v. Taylor–Lustig, Inc., 188 Cal. App. 4th 297, 310 (2010)). The third element is at issue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

here. "Numerous courts note that '[t]he prima facie burden is light; the evidence necessary to sustain the burden is minimal.'" Id. (quoting Sandell, 188 Cal. App. 4th at 310). "The plaintiff can meet this burden by presenting evidence that demonstrates, even circumstantially or by inference, that he . . . was subjected to an adverse employment action because of the disability or perceived disability." Sandell, 188 Cal. App. 4th at 310. Ultimately, plaintiff need only demonstrate that his disability was a "substantial factor" in DHL's termination decision. Harris v. City of Santa Monica, 56 Cal. 4th 203, 216 (2013).

In addition, to show that plaintiff was subjected to an adverse employment action because of his disability, plaintiff may offer evidence suggesting that he was fired for conduct caused by his disability. See Equal Employment Opportunity Comm'n v. Walgreen Co., 34 F. Supp. 3d 1049, 1058–59 (N.D. Cal. 2014). In Walgreen, as here, the plaintiff was a diabetic and her employer was aware of her disability. When the plaintiff was stocking an aisle, she had a sudden hypoglycemic attack, so she grabbed and ate a bag of potato chips from the store shelf to stabilize her condition. Id. at 1050. The employer terminated her for taking the bag of chips in violation of its "anti-grazing policy." Id. at 1051. In denying the employer's motion for summary judgment, the court noted that "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." Id. at 1054–55 (quoting Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1139–40 (9th Cir. 2001). Accordingly, the court concluded that there were material issues of disputed fact because the plaintiff could not be fired for conduct caused by her disability. Id. at 1056–57.

Here, DHL moved for judgment as a matter of law pursuant to Rule 50(a) after the plaintiff rested his case-in-chief, and the Court reserved judgment. Dkt. 62. In the instant renewed motion under Rule 50(b), DHL argues that plaintiff failed to satisfy his initial burden under McDonnell Douglas based on the evidence presented during plaintiff's case-in-chief. See Mot. at 4–7. The Court recognizes that in an employment discrimination action, once both parties satisfy their respective intermediate burdens and the case is submitted to the jury, the McDonnell Douglas framework disappears and the sole remaining issue is whether the plaintiff carried his or her ultimate burden of proving intentional discrimination. See Reeves, 530 U.S. 133, 142–43 (2000). So, as a general matter, the court should review the entire record in ruling on a Rule 50(b) motion. Id. at 150. However, the Court also has discretion to reserve ruling on a Rule 50(a) motion, submit the case to the jury, and then pass on the sufficiency of the evidence by way of a post-verdict motion. Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 406

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

O

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

(2006). Accordingly, for the purposes of DHL's Rule 50(b) motion, the Court finds it appropriate to limit the inquiry to plaintiff's case-in-chief.

The Court finds that plaintiff presented substantial evidence to satisfy his initial burden of establishing a prima facie case of disability discrimination and wrongful termination. Plaintiff and Plasencia testified that DHL's managers, including Baitz, were aware that plaintiff was a diabetic but nonetheless refused to allow him to take regular meal breaks. 1RT 76–81, 85; 2RT 46–48, 60. They also testified that DHL did not allow drivers to make stops for food or eat in their trucks. 1RT 58; 2RT 110. Plaintiff's testimony regarding his prior suspension in August 2012 indicates he had already been disciplined for making an unauthorized stop for food even though he had explained it was an emergency because he having a hypoglycemic episode. See 2RT 53–60. Plaintiff testified that he was denied a meal break again on July 18, 2013 and had a similar episode requiring him to make an unplanned stop to drink sugar water. Plaintiff testified that he had a miscommunication with Carlos and repeatedly explained the situation to his managers, who were aware he had diabetes. Nonetheless, he was suspended and then terminated. 2RT 102–130. Based this testimony, the jury could reasonably infer that a substantial motivating factor in DHL's termination decision was plaintiff's unauthorized stop, which was conduct caused by plaintiff's disability.

At oral argument, DHL sought to distinguish Walgreen because in that case there was direct evidence that the employer terminated the plaintiff for violating its anti-grazing policy, and the employer did not provide any other justification. 34 F. Supp. 3d at 1051, 1059. Here, on the other hand, plaintiff testified that DHL informed him that he had been terminated for "dishonest behavior." 2RT 130–32. Accordingly, based solely on the testimony presented during plaintiff's case-in-chief, the jury would need to infer that plaintiff's disability-caused conduct, his unauthorized stop, was a substantial motivating factor in DHL's termination decision notwithstanding DHL's stated justification. As the Court previously noted, plaintiff's "prima facie burden is light" and "the evidence necessary to sustain the burden is minimal." McInteer, 40 F. Supp. 3d at 1281 (quoting Sandell, 188 Cal. App. 4th at 310). Plaintiff is not required to present direct evidence, rather an "employee need only offer sufficient circumstantial evidence to give rise to a reasonable *inference* of discrimination." Id. "This step is designed to eliminate at the outset the most patently meritless claims." Guz, 24 Cal. 4th at 354. Construing the testimony in the light most favorable to plaintiff, the jury could reasonably infer that DHL decided to terminate plaintiff, at least in substantial part, due to his unauthorized stop—just as it had suspended him for his prior unauthorized food

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES - GENERAL

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

stop in August 2012. The Court therefore concludes that plaintiff carried his burden of establishing a prima facie case.

Accordingly, the Court **DENIES** defendant's renewed motion for judgment as a matter of law.

## V. DEFENDANT'S MOTION FOR A NEW TRIAL

In DHL's motion for a new trial, it argues that the jury verdict is contrary to the weight of the evidence on plaintiff's second claim for failure to provide a reasonable accommodation, third claim for failure to engage in an interactive process, and fifth claim for disability discrimination. Mot. at 7–18. DHL also contends that alleged misconduct by plaintiff's counsel improperly and prejudicially influenced the verdict. Id. at 19–22.

### A. Weight of the Evidence

First, the Court disagrees that the jury verdict was contrary to the weight of the evidence. With respect to the disability discrimination claim, plaintiff carried his initial burden of establishing a prima facie case, and therefore the burden shifted to DHL to articulate a legitimate, non-discriminatory reason for its termination decision. See Guz, 24 Cal. 4th at 354. DHL, through its manager Baitz, provided two: (1) plaintiff failed to report an unauthorized stop in violation of company policy; and (2) plaintiff allegedly lied to Carlos about his whereabouts. 3RT 130–31. Accordingly, the burden again shifted to plaintiff to submit substantial evidence that DHL's stated reasons were untrue or pretextual, or that the employer acted with discriminatory animus. See Guz, 24 Cal. 4th at 356. "The trial court decides the first two stages . . . as questions of law. If the plaintiff and defendant satisfy their respective burdens . . . the question whether the defendant unlawfully discriminated against the plaintiff is submitted to the jury to decide whether it believes the defendant's or the plaintiff's explanation." Swanson v. Morongo Unified Sch. Dist., 232 Cal. App. 4th 954, 965 (2014) (citing Caldwell, 41 Cal. App. 4th at 201).

The jury believed plaintiff and found that his disability was a substantial motivating reason for DHL's termination decision. Special Verdict Form at 4. The jury also specifically rejected DHL's proffered justifications for plaintiff's discharge. Id. The Court agrees that plaintiff's testimony was credible. Although Carlos, Baitz, and Dugan testified that plaintiff repeatedly lied about his whereabouts, it is plausible that there was a miscommunication. Plaintiff testified that during the meetings with management and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

O

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

his shop steward, Bravo, on July 18 and 19, 2013, he repeatedly explained that he had stopped the truck because he was feeling dizzy and had blurred vision so he needed to drink sugar water to stabilize his blood sugar level. 2RT 129–132. DHL's witnesses, on the other hand, testified that plaintiff provided numerous, inconsistent explanations for the unplanned stop. But both Carlos and Bravo acknowledged on cross-examination that plaintiff told them immediately following the incident that he had stopped because he needed to drink water or words to that effect. 3RT 188; 4RT 26–27. These admissions support plaintiff's version of the events.

There is also substantial documentary evidence supporting the verdict. In Baitz's July 18, 2013 email to DHL's HR department—the only contemporaneous account of his motivations for discharging plaintiff—Baitz wrote: "I want to terminate him for lying to supervisor and *theft of time*." 3RT 133 (emphasis added). This email suggests that plaintiff's unauthorized stop itself, rather than his failure to report, was a substantial motivating factor in the termination decision. Because plaintiff presented credible testimony that he had stopped the truck because he was having a hypoglycemic episode, there is substantial evidence that he was discharged for conduct caused by his disability. See Walgreen, 34 F. Supp. 3d at 1058–59; Humphrey, 239 F.3d at 1139. Accordingly, the Court concludes that the weight of the evidence supports the verdict on plaintiff's disability discrimination claim.[2]

Plaintiff's claims for failure to provide a reasonable accommodation and failure to engage in an interactive process likewise depend witness credibility. DHL argues the weight of the evidence demonstrates that plaintiff's disability was reasonably

---

[2] DHL makes a related argument that the jury failed to follow the Court's instructions. Mot. at 12–15. According to DHL, the Court in denying summary judgment identified Baitz's email as the appropriate evidentiary basis for plaintiff's discrimination claim. Id. at 13. Because plaintiff never introduced this email during his case-in-chief, DHL contends that plaintiff could not have satisfied his initial burden and therefore the verdict should be set aside because the jury failed to follow the McDonnell-Douglas burden-shifting framework. Id. However, whether plaintiff satisfied his initial burden is for the Court, not the jury, to decide. Swanson, 232 Cal.App.4th at 965. The jury was never instructed to apply the McDonnell-Douglas framework. Indeed, such an instruction would constitute error. See Sanghvi v. City of Claremont, 328 F.3d 532, 540–41 (9th Cir. 2003). Accordingly, the Court finds no support for DHL's argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**O**

**CIVIL MINUTES - GENERAL**

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

accommodated by (1) allowing him to keep food in the cab of his truck, and (2) permitting him to take lunch breaks every day. Mot. at 15. DHL further contends the evidence clearly establishes that it engaged in a good faith interactive process resulting in DHL providing these reasonable accommodations. Id. at 18. But both plaintiff and Plasencia testified that DHL did not allow drivers to keep food in their trucks and repeatedly denied plaintiff's requests for regular lunch breaks. 1RT 58, 76–81; 2RT 46–48, 110. Although DHL offered testimony by several cargo handlers, managers, and its labor relations director indicating that DHL accommodated drivers by allowing food in their trucks and regular lunch breaks, see 4RT 28–85, the Court finds that plaintiff's testimony was credible and not refuted or outweighed by any contrary defense witness testimony. Accordingly, the Court concludes that the weight of the evidence supports the verdict on plaintiff's second and third claims.

### B. Alleged Attorney Misconduct

Finally, DHL seeks a new trial because of alleged misconduct by the plaintiffs' counsel. "To receive a new trial because of attorney misconduct in the civil context, [the moving party] must meet a high standard: the moving party must demonstrate adverse counsel's misconduct substantially interfered with the moving party's interest." SEC v. Jasper, 678 F.3d 1116, 1129 (9th Cir. 2012) (internal quotation marks omitted). A new trial based on alleged attorney misconduct should only be granted "where the flavor of misconduct . . . sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." Settlegoode v. Portland Pub. Schs., 371 F.3d 503, 516-17 (9th Cir. 2004) (internal quotation marks and citations omitted).

DHL argues that plaintiff's counsel (1) repeatedly exceeded the Court's instructions regarding the scope of permissible testimony, (2) made improper comments to the jury, and (3) provided a script for its witness, Ramos, to use during his testimony. Mot. at 18–20. With respect to the first two allegations, the Court finds no misconduct by plaintiff's counsel. The use of scripted testimony, however, can be "highly improper." United States v. Milles, 363 F. App'x 506, 509 (9th Cir. 2010). After Ramos acknowledged that he was relying on a document during his testimony, the Court ordered that it be provided to defense counsel. Ramos thereafter admitted in the presence of the jury that he was relying on the scripted outline while testifying and that he had received it from plaintiff's counsel. See 2RT 27–29, 34, 37–38. Even if plaintiff's counsel engaged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

O

| Case No. | CV15-5510-CAS(Ex) | Date | October 4, 2017 |
|---|---|---|---|
| Title | SALVADOR NAVARRO V. DHL GLOBAL FORWARDING ET AL. | | |

in misconduct by using scripted testimony, the Court finds no showing of prejudice.[3] To the contrary, the incident allowed defense counsel to cross-examine Ramos about the veracity of his testimony and argue during closing statements that he was not credible. 5RT 123.

Accordingly, the Court **DENIES** defendant's motion for a new trial.

## VI. CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion for judgment as a matter of law and, in the alternative, a new trial.

IT IS SO ORDERED.

|  | 00 | 00 |
|---|---|---|
| Initials of Preparer | | CL |

---

[3] In opposition, plaintiff maintains that the document was provided to Ramos due to his limited English language proficiency and that his answers were not drafted by counsel. Opp'n at 20; Ashkinadze Decl. ¶ 2. The Court makes no finding as to whether plaintiff's counsel engaged in misconduct.